IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JEROME M. HEWETT, | ) | C/A No.: 4:07-CV-00998-HFF-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| TOM FOX, DIRECTOR; and JUDY KING, | ) | |
| NURSE; | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Jerome M. Hewett, filed this action under 42 U.S.C. § 1983[1] on April 16, 2007,

alleging violations of his constitutional rights. Plaintiff is currently a pretrial detainee incarcerated

in the J. Reuben Long Detention Center ("JRLDC"). Defendant Fox[2] ("defendant") filed a motion

for summary judgment on September 26, 2007. (Document #28).  Because plaintiff is proceeding

pro se, he was advised on or about September 28, 2007, pursuant to Roseboro v. Garrison, 528 F.2d

309 (4th Cir. 1975), that a failure to respond to the defendant's motion for summary judgment with

additional evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

[2] Counsel for defendant Fox asserts that service of process on defendant Judy King has not been affected. Based on a review of the docket sheet in this case (Docket entry #20), the return was unexecuted as to Judy King, "unable to locate." Therefore, service of process has not been affected as to this defendant.  Additionally, defendant submitted the affidavit of Joseph Johnson, Deputy Director at the JRLDC, who attests that Judy King was not an employee of the JRLDC or of defendant Fox at the time of the events in plaintiff's complaint.

a response on October 10, 2007, (document #32).

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges indifference to his medical needs and a constitutional violation due to the conditions of confinement at the JRLDC consisting of overcrowding. The allegations in plaintiff's complaint are set forth herein, *quoted verbatim*:

> On April 3rd 2007 at around 7pm in the B block of J. Ruben Long detention center the tolit over flow from "over crowded" three men to a one man cell. The water was on the floor and I got up and slip and fell. "I got up from the floor where I was sleeping" When I fell my back hit the corner of the door and I hit the floor. Covered in water and who know's what else I was in pain my roomates call for help and the nurse and guards came. My roommate Troy Dixon seen the whole thing. When the guards and nurse got to my cell Room 131 the nurse check my pulse and blood pressure. Being my pulse and blood pressure where normal she got ill and started saying I wasn't hurt and that she couldn't help me. The guard over the shiff Watts maid the statement just close the door. He will be ok and when I got mad and said I was hurting that I would file a suit the nurse started curseing me. Which is documented in the guards Report on how she Nurse Judy talked to me. Then officer Watts said that if they took me to the ER that I would go to max-security when I returned. The nurse said that there was no brusing and gave me one 800 mg Ibprofen and close the cell door. I lay in the floor all night in pain till the next day at 10:00 am when the Head nurse came in nurse (don) gave me 2 shots to take away the pain and it did for about 1 hour and then started back hurting around 2:30 pm on the 4th I was took to the ER for x-rays. The ER doctor said that there was bruising and swelling around my lower back but I would need further testing to see more info. Like a MRI. The ER doc gave me a prescription for muscle relaxer and a mild pain reducer. Also said put ice pack on the area for 5 days. I have yet to receive the ice pack and today is the 10th of April. He also said if pain percisted for me to return for the last 6 or 7 day I have been hurting like I was beat with a baseball bat. I have told the nurses everytime they bring my meds and they do nothing for me. I have put in request and told that Im still in pain and the nurses said I would have to get my family to make an appointment and I would have to pay for the visit to the doctor. Also I had to file my ER visit

2

on my own Ins. I am still in pain and I am not getting the medical care
I should be getting. So please help me.. . .

(Complaint).

In the relief portion of the complaint, plaintiff requests proper health care for him and others.

(Complaint, p. 5).


## B.  STANDARD FOR SUMMARY JUDGMENT

As previously stated, defendants filed a motion for summary judgment.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both

parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  <u>See</u> Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the <u>Celotex</u> case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  <u>Celotex</u>, 477 U.S. at 322-323.

## C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.  <u>Cooper v. Dyke</u>, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in <u>Ingraham v. Wright</u>, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  <u>Bell v. Wolfish</u>, 441 U.S. 520

4

(1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a pro se litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the pro se litigant or excuse a failure to comply with the rules of this court.

## D. MEDICAL INDIFFERENCE

As previously stated, plaintiff alleges that while a pretrial detainee at JRLDC he suffered deliberate indifference to his medical needs.

Defendant asserts in his motion for summary judgment that plaintiff received adequate care

5

and there was no medical indifference with regard to his medical care.  Defendant argues that there is no evidence or allegation that defendant Fox even knew about plaintiff's "medical complaints, fall, or treatment, let alone that he had a culpable state of mind or was subjectively reckless in response, as required to establish a medical indifference claim against Defendant Fox." (Defendant's memorandum).

Defendant submitted the affidavit of Joseph Johnson, Major and Deputy Director of the JRLDC, who submitted all records of plaintiff that were made at or near the time of the incidents described. Johnson attests that these records were made and kept in the course of the regularly conducted activities of the JRLDC. A review of plaintiff's medical records reveal plaintiff was examined by a medical doctor at the hospital, received x-rays and was diagnosed with lumbar pain radiating into the right leg, and was given prescriptions for Flexeril, Naprosyn, ice packs and instructions to return if the symptoms increased or changed. The Hospital records also revealed that plaintiff had a scar from prior back surgery for a herniated disc, but the Intake records from the Detention Center reveal that plaintiff did not report this during intake but only reported a history of cocaine use which the Nurse Practitioner documented as warranting monitoring for drug seeking behavior. (See Intake records attached to Johnson's affidavit). Records from the JRLDC also reveal that the day before this incident, plaintiff asked to see a nurse because of back pain from the previously undisclosed prior surgery and wanted medication and an extra mat. At that time, plaintiff noted on his medical request form of April 2, 2007, that "its all I can do to get up out of bed." The medical records submitted by defendant from the JRLDC reveal that plaintiff was administered the prescribed medication upon his return from the hospital. It is noted that plaintiff received an ice pack upon his return from the ER. (See affidavit of Joseph Johnson and medication administration

records). Based on the JRLDC records, plaintiff completed another medical request form on April 6, 2007, requesting to see the Nurse who had given him pain injections and asserting that the medications were not helping and that he was not receiving the medical attention that the Emergency Room doctor ordered. (See medical request of 4/6/07, affidavit of Joseph Johnson). The medical records reveal that when he was seen again by the nurse on April 9, 2007, it was noted that plaintiff was receiving the medications ordered by the Emergency Room doctor and was advised that he could see a doctor of his choice and transportation would be provided.

In response to the motion for summary judgment, plaintiff filed his statement and the statements of his two cell mates at the time of the incident, Troy Dixon and Joey Floyd. Dixon states that he witnessed plaintiff falling in the water from the toilet over flowing and that he called for help. Dixon asserts that the nurse came and checked him but then cursed at the plaintiff and left. Dixon asserts that it was the next day before he was seen again by medical. Floyd asserts that he was asleep when plaintiff fell but that he witnessed Nurse Judy King cursing at plaintiff that he was not really hurt and denied him medical attention and it was the next day before plaintiff was taken to the Emergency Room. (See docket entries 32–2 and 32-3).

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).  The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . .  We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is

7

> manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise.");

9

Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

In the present case, the plaintiff's allegations are brought against the Director of the JRLDC, Tom Fox. First, the undersigned notes that the defendant is not medical personnel. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment.

*Id.* Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against the defendant who is non-medical personnel.

Furthermore, in his complaint, plaintiff admits that time he fell on April 3, 2007, and his cell mates called for help, the Nurse and guard came. Plaintiff also admits that the Nurse gave him 800 mg of Ibuprofen after examining him for bruising, checking his pulse and blood pressure. Plaintiff also asserted in his complaint that he was seen by a second Nurse the next morning who gave him shots for pain. Additionally, plaintiff was transported to the ER for evaluation and treatment. Plaintiff did receive medication at the JRLDC. Thus, although plaintiff did not agree with the type of treatment he received, the fact is plaintiff was provided treatment. As previously stated, defendant is not medical personnel but the Director of the JRLDC. Plaintiff has failed to show that defendant Fox was personally involved with a any alleged denial or delay of treatment or that he deliberately interfered with plaintiff's medical treatment.[3] Therefore, any claims against this defendant for medical indifference fails.[4]

## E.  CONDITIONS OF CONFINEMENT

As stated previously, the plaintiff complains that the JRLDC is overcrowded with three men

---

[3]  Injury to his back as a result of the fall itself, is simply a negligence claim not cognizable under Section 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983 and negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983.

[4]  Even assuming *arguendo* that this defendant had been directly involved, a review of plaintiff's medical records submitted by defendant reveals plaintiff received treatment, was sent to the hospital, and was given medication as prescribed. Based on the above, plaintiff's claims of medical indifference, if any, must fail as a matter of law. Thus, the undersigned recommends that the motion for summary judgment filed by defendant Fox be granted as it relates to the plaintiff's claims of medical indifference.

to a one man cell which he alleges caused the toilets to overflow resulting in the water that caused his fall.

Defendant argues that this allegation should be dismissed in that plaintiff alleges that the toilet overflowed in his cell on one occasion which is an isolated occurrence, not an ongoing condition of confinement. Further, defendant asserts that it is well-established that triple bunking or triple-celling is not per se unconstitutional and aside from the triple bunking allegation, there is no allegation or evidence that the conditions of plaintiff's confinement have deprived him of any identifiable human need.

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment.  Bell, 441 U.S.at 535 n.16.   To prevail on a conditions of confinement claim, a  pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred.   Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)).   Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering.  Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995).  The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  However, due process also requires the State to provide pretrial detainees with some minimal level of food, living

12

space, and medical care, and "the failure to provide that level of necessities violates due process-- even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

With respect to plaintiff's complaints concerning overcrowding, the JRLDC may have in fact had an excess of inmates during the relevant time period, but that does not mean plaintiff's constitutional rights were violated. It is "well established that 'double or triple celling of inmates is not per se unconstitutional.'" Hause v. Harris, 2008 WL 216651 (D.S.C. January 23, 2008) citing Mathias v. Simpkins, 2007 WL 1577336 at *2 (W.D. Va. May 31, 2007). Plaintiff has failed to show that defendant Fox actually knew of and disregarded a substantial risk of serious injury to the detainee or that he actually knew of and ignored any serious need for medical care on behalf of the plaintiff. See Coclough v. Major, 2008 WL 1744556 (D.S.C. April 10, 2008) citing Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004). Therefore, no viable 1983 claim has been presented. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985)[the fact that pretrial detainee temporarily had to sleep on a mattress on the floor or on a table "is not necessarily a constitutional violation."]. Furthermore, plaintiff fails to show that this defendant had an express intent to punish him.

Additionally, plaintiff has not presented evidence to create a genuine issue of material fact

as to whether plaintiff was denied the minimal civilized measure of life's necessities, or that the named defendant engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Plaintiff has not shown that he was deprived a "basic need" and that these deprivations were attended by deliberate indifference on the part of the defendants. <u>Strickler</u>, <u>supra</u> Further, plaintiff has failed to show any express intent on the part of defendant Fox to punish him. Based on the reasons discussed above, the undersigned recommends that summary judgment for the defendants be granted. [5]

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. <u>See</u> <u>Olim v. Wakinekona</u>, <u>supra</u>. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. <u>Block v. Rutherford</u>, <u>supra</u>; <u>Rhodes v. Chapman</u>, <u>supra</u>. Plaintiff, like any detainee, cannot expect the amenities, conveniences, and services of a good hotel. <u>Harris v. Fleming</u>, <u>supra</u>. As previously discussed, the Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the facility and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends

---

[5]    Further, any allegations plaintiff may be attempting regarding other inmates must fail. To state a civil rights claim, one must allege that he, himself, sustained a deprivation of right, privilege, or immunity secured by the Constitution of federal law. <u>Inmates v. Owens</u>, 561 F.2d 560, 562-63 (4th Cir. 1977). To demonstrate standing, plaintiff must allege personal injury fairly traceable to defendant's allegedly unlawful conduct and likely to be redressed by requested relief. <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984).

constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

## F.  QUALIFIED IMMUNITY

Defendant argues that he is entitled to qualified immunity pursuant to Harlow v. Fitzgerald, 457 U.S. 800 (1982). Defendant argues that  plaintiff is unable to state a constitutional claim against him.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity.  Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment.  For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

Government officials performing discretionary functions generally are

15

> shielded from liability for civil damages insofar as their conduct does
> not violate clearly established statutory or constitutional rights of
> which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for
> civil monetary damages if the officer's "conduct does not violate
> clearly established statutory or constitutional rights of which a
> reasonable person would have known." "In determining whether the
> specific right allegedly violated was 'clearly established,' the proper
> focus is not upon the right at its most general or abstract level, but at
> the level of its application to the specific conduct being challenged."
> Moreover, "the manner in which this [clearly established] right
> applies to the actions of the official must also be apparent." As such,
> if there is a "legitimate question" as to whether an official's conduct
> constitutes a constitutional violation, the official is entitled to
> qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824

(1995).  As discussed above, the plaintiff fails to show that Defendant Fox  violated any of his

clearly established constitutional or statutory rights. Therefore, defendant Fox is entitled to qualified

immunity in his individual capacity.  Thus, the undersigned recommends that the defendant's motion

for summary judgment be granted on this issue.


## G. ELEVENTH AMENDMENT IMMUNITY

The defendant contends that the plaintiff's §1983 claims against him for money damages

in their official capacities are barred pursuant to their Eleventh Amendment Immunity.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one

against the state, the real party in interest.  If review of the pleadings indicates that the state is, in

fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that defendant Fox is an Official of the Office of the Sheriff of Horry County as an employee of the JRLDC (see Johnson Affidavit) and, therefore, is entitled to Eleventh Amendment immunity from monetary damages.

## H.  PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## I.  SUPERVISORY LIABILITY

Defendant asserts that he is entitled to summary judgment in that plaintiff cannot maintain an action against hi based on a theory of supervisory liability.  Defendant Fox argues that the claims against him are premised on his position as the Director of the JRLDC.

There are three elements necessary to establish supervisory liability under §1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791 (4ᵗʰ Cir. 1994). To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Id. *citing* Slakan v. Porter, 737 F.2d 368 (4ᵗʰ Cir. 1984). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is

18

widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. <u>Id</u>. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." <u>Id</u>. Causation is established when the plaintiff demonstrates and affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff. <u>Id</u>. Plaintiff has failed to meet this burden in that he has failed to establish a constitutional violation. Thus, it is recommended that summary judgment be granted for defendant on the theory of supervisory liability.

### III.  CONCLUSION

The plaintiff has failed to show that defendant Fox violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendant Fox (document #28) for summary judgment be GRANTED IN ITS ENTIRETY and the case dismissed.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 2, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

19